From C. P. Addams, Harrisburg, Pa.

## Harris-Boyer Company v. Gartmann et al.

*Barnhart & Bender* and *Porter & McConnell*, for plaintiff.
*Bell & Bell* and *Lightcap & Lightcap*, for defendants.

Dom, J., Jan. 17, 1929.—

### Findings of fact.

1. The plaintiff, Harris-Boyer Company, is a Pennsylvania corporation, having its principal office and place of business in the City of Johnstown, County of Cambria and State of Pennsylvania, and is engaged in the business of baking and marketing bread and similar products incidental to a general bakery business, and has, from and since Feb. 25, 1924, up to and including the present time, made and marketed a certain kind of bread under the trade name of "Butter-Nut" bread.

2. The plaintiff, in order to create a demand for and bring said bread to the public attention, has expended large sums of money from time to time in extensive advertising campaigns, such as newspaper, poster and bill-board advertisements and store displays, in Somerset Borough, Somerset County, and in that portion of Somerset County which is north of said borough, and in all other places where its products are marketed.

3. That by reason of said advertising and marketing of said "Butter-Nut" bread, a large, extensive and valuable demand for said bread has been established in and about the Borough of Somerset and in other parts of Somerset County north of said borough.

4. Customers in said territory where "Butter-Nut" bread has been established have become familiar with said trade name, "Butter-Nut," as signifying a distinct type of bread and manufactured and marketed by the plaintiff.

5. That the territory known as the northern half of Somerset County includes the communities or Boroughs of Somerset, Listie, Friedens, Jenner, Jennertown, Jenner No. 2 and Boswell.

6. The plaintiff commenced marketing "Butter-Nut" bread Feb. 25, 1925, and had established a demand for said bread in the said northern portion of Somerset County shortly thereafter, which demand has continued up to and including the present time.

7. The defendants are engaged in the general bakery business with their bakery in the Borough of Latrobe, Westmoreland County, and among their products they manufacture a loaf of bread which is marketed under the trade name "Butter-Nut."

8. The defendants marketed their loaf of "Butter-Nut" bread in the said boroughs or communities in the northern portion of Somerset County on and after Oct. 20, 1927, which was subsequent to the time that the plaintiff had established a market for "Butter-Nut" bread in said places.

9. The defendants knew that the plaintiff had established a market for "Butter-Nut" bread at a time prior to their commencing to market their "Butter-Nut" bread in said northern portion of Somerset County.

10. The product of both the plaintiff and defendants at the time and places mentioned was marketed under the trade name "Genuine Butter-Nut Bread."

11. Said bread is known to the trade and to dealers generally by the name "Butter-Nut."

12. That customers ask for said bread by the name "Butter-Nut."

13. The shape or type of loaf used by both plaintiff and defendants is similar, said type of loaf having an odd and unusual shape, in that the top of said loaf has a depression or cut running along the length and in the middle of the top of said loaf, which type of loaf is known to the trade as a "Split-top" loaf.

14. That the wrappers used by both the plaintiff and defendants have the following points of similarity: *(a)* Both are made of waxed paper; *(b)* both contain the words "Genuine Butter-Nut Bread;" *(c)* both have printed thereon the print of a child dressed in bakers' apron and cap and carrying a "split-top" loaf of bread, which print is a distinctive cut or picture used exclusively on "Butter-Nut" bread wrappers and advertisements; *(d)* both have printed thereon a blue circular seal, with points around the circumference, bearing the words "Genuine Butter-Nut Bread" upon said seal.

15. That the wrappers of the plaintiff and defendants are sufficiently similar to deceive ordinary customers who buy the bread by sight.

16. That both the plaintiff and defendants have obtained licenses to manufacture "Genuine Butter-Nut Bread" from the Schulze Baking Company of Chicago, Illinois. That said licenses purport to give them the exclusive right to manufacture said bread in the Borough of Latrobe as to the defendants and the County of Cambria as to the plaintiff.

### Conclusions of law.

1. The plaintiff having established a market for its "Butter-Nut" bread in the boroughs and communities known as Somerset, Listie, Friedens, Jenner, Jennertown, Jenner No. 2 and Boswell, prior to the time that the defendants commenced to market their "Butter-Nut" bread in said places, and the plaintiff having continually marketed its product at said places, the plaintiff had and has the exclusive right to market "Butter-Nut" bread in said boroughs and communities.

2. The acts of the defendants in knowingly marketing their "Butter-Nut" bread in the boroughs and communities of Somerset, Listie, Friedens, Jenner,

Jennertown, Jenner No. 2 and Boswell, at a time subsequent to the time which the plaintiff had previously established a market for said "Butter-Nut" bread in said boroughs and communities constitute unfair trade competition.

3. The fact that the defendants sold a similar product, that is, bread, under the same trade name, "Butter-Nut," of the same style and shape, and in wrappers sufficiently similar to plaintiff's to mislead the buying public in the belief that they were buying the product of the plaintiff in the territories where the plaintiff had previously established a market for its products is sufficient to constitute unfair trade competition on the part of the defendants; both the product of the plaintiff and defendants being sold under that trade name;

4. The fact that both the plaintiff and defendants had licenses from the Schulze Baking Company, which licenses purport to give them certain rights, is immaterial in this case.

5. That the defendants are guilty of unfair trade competition and should be enjoined from marketing bread in the Borough of Somerset, or in any part of Somerset County north of the said borough, under the name of "Butter-Nut" or any variation of said name.

6. That the costs of this proceeding shall be paid by the defendants.

*Discussion.*

The evidence upon which the foregoing findings of fact are based is pretty nearly free from conflict and contradictions; and we justify our conclusions of law upon the principles applicable to the instant case enunciated in the following authorities: Pennsylvania Central Brewing Co. *v.* Anthracite Beer Co., 258 Pa. 45; Wilson E. Schmick, trading as Hamburg Broom Works, *v.* West Reading Broom Works et al., 79 Pa. Superior Ct. 331; Klepser *v.* Furry, 289 Pa. 152; United Drug Co. *v.* Kovacs, 279 Pa. 132; Chas. H. Elliott Co. *v.* Skillkrafters, Inc., et al., 271 Pa. 185; Hub Clothing Co. *v.* Cohen et al., 270 Pa. 487.

The bill in this case was filed to restrain unfair trade and competition and to prevent irreparable damage to the plaintiff.

The testimony discloses that the plaintiff's total volume of business in a year runs in the neighborhood of $1,000,000; that they did a business in the territory in dispute of about $65,000, of which about $40,000 was the return from "Butter-Nut" bread; that they advertised "Butter-Nut" bread in the said territory to the extent of thirteen or fourteen hundred dollars a year; that since the defendants came into the territory, the sale of "Butter-Nut" bread by the plaintiff has materially decreased and that they have suffered considerable of a loss from the sale of the defendants' "Butter-Nut" bread.

At the time the defendants went into the territory they knew, or should have known, that the plaintiff had built up a substantial trade and that their own product was so similar to that of the plaintiff's that it probably would result in deception and in the passing of the goods of the defendants for the plaintiff's, or would bring about confusion of the product on the said market.

The defendants, in accordance with what they knew, or should have known, have brought about a condition of unfair competition which it is the duty of a court of equity to check.

A comparison of the appearance of the respective products discloses nearly exact identity as to shape and size and a marked resemblance in the type of wrapper.

It is not necessary that the similarity would mislead an expert—the test of likeness would seem to be memory and not visual comparison (Nims on Unfair

432

Competition) ; it is not whether a difference might be recognized when the respective products may be placed side by side, but whether an average buyer is able to distinguish the packages from memory. We decide this case as we do because of the impressions created by the goods.

*Decree nisi.*

And now, Jan. 17, 1929, after argument and upon due consideration, it is ordered, adjudged and decreed that the marketing of "Butter-Nut" bread by the defendants as charged in the bill was and is unfair trade competition and to the injury of the plaintiff; that a perpetual injunction issue, enjoining and restraining the defendants, M. J. Gartmann and Adolph F. Gartmann, copartners, trading as the Keystone Baking Company, their servants, agents and employees, from any further marketing of bread in the Borough of Somerset, or in any part of Somerset County north of the said borough, under the name of "Butter-Nut," or any variation of said name, and from any further use by them in the aforesaid territory of their trade wrapper, "Exhibit B" attached to the bill, or any other substantially similar thereto, and from any further use of any wrapper substantially similar to the plaintiff's wrapper, "Exhibit A" attached to the bill; that the defendants pay the costs.

From William S. Rial, Greensburg, Pa.